## BLACKSTONE BANK *versus* DAN HILL. 129

Where, according to the usage of a bank, a note of principal and surety payable in sixty days was renewable by the payment of twenty-five per cent at the expiration of that time, without a new note being given, and if the principal aided the operations of the bank in a certain manner, the credit was continued from time to time on his paying the interest in advance, it being understood that if the bank should want money, the note might be collected before the expiration of the credit thus obtained ; it was *held*, that such enlargement of the credit would not discharge a surety, for that the bank did not disable itself to sue the principal at any time.

The principle of law, by which a creditor, having several demands against his debtor, may elect to appropriate a payment to any one of them, if the debtor makes no election, is applicable only to voluntary payments.

Thus, where a creditor recovered one judgment on several notes, some of which were made by the judgment debtor alone, and others were signed also by a surety, and took out an execution which was satisfied in part by a levy, it was *held*, that he could not appropriate this payment solely to the notes not signed by the surety, but that all the notes were paid proportionably.

Where property was assigned by the principal in a promissory note, to a surety, to be applied in the first place to indemnify the surety against his liability, and the surplus to be paid over to a creditor of the assignor, it was *held*, that the surety's obligation to pay the note was not increased by the assignment.

ASSUMPSIT on two promissory notes made jointly and severally by George Wall as principal and the defendant as surety. One note, dated October 2d, 1826, was for $300, the other, dated December 25th, 1826, for $600, each payable to the plaintiffs in sixty days after its date.

The cause was tried before the late Chief Justice *Parker.* The defence was, that credit was given by the plaintiffs to Wall, after the note became due, and that the principal having failed, the defendant was discharged.

It was proved, that on loans made by the bank in this form,

Blackstone
Bank
*v.*
Hill.

it was the practice to renew the note on the payment of twenty-five per cent at the expiration of sixty days, without taking a new note. It was also the practice to continue to credit from time to time, when the affairs of the bank admitted of it, on the payment of the interest in advance, to directors and other customers who exchanged at the bank the bills of other banks for the bills of this bank ; but such exchanges of money were matters of accommodation with the bank, and were not parts of the negotiation for any particular loan or renewal of a loan ; and on such payment of interest under such circumstances, the note lay, with the indorsement of interest upon it, the bank and the borrower understanding that if the bank should want money, the borrower might be called upon before the expiration of his credit thus obtained.

The loans secured by the notes in suit were thus continued from time to time until the failure of Wall, which was in October 1828. It was proved by the cashier of the bank, that three months, and also immediately, before the failure, the defendant was told that these notes were in the bank unpaid ; and that the defendant had been a borrower at the bank, but had always paid his notes by instalments of twenty-five per cent, in the usual course of business at the bank.

The defendant also contended, that if he was not discharged by the foregoing facts, the plaintiffs were entitled to recover only a small part of the sum demanded, for the following reasons. Before March term 1829 of the Common Pleas, and before the commencement of this suit, the plaintiffs brought an action against Wall on a large number of promissory notes made by him to the bank, some of which were signed by him alone, and others by him and a surety. Real estate was attached to secure these notes, among which were the notes now in question. Notes thus sued, to the amount of $1267, were secured by Wall by a pledge of nineteen shares in the bank. Judgment was obtained by the bank, at the March term above mentioned, for $8359, and an execution issued thereon was satisfied, to the amount of $6294, by a levy on the real estate attached and by a sale of the shares pledged. The defendant insisted that this sum ought to be apportioned on all the notes included in the judgment, so as to discharge such proportion

of each of the two notes signed by him, as the whole proceeds of the property bore to the whole amount of the judgment, and thus leave him liable for only the balance of the two notes. The plaintiffs contended, that if any proportionable deduction was to be made from the defendant's notes on account of the part satisfaction of their judgment, they had a right, in the first place, to appropriate the property secured by the levy, to the payment of such notes in the bank as were not secured by sureties. But to show that no such deduction should be made, the plaintiffs proved that Wall, before his failure, assigned goods to the defendant to indemnify him against his liabilities for Wall. The goods were assigned to the defendant, "to secure him for all legal demands he may have against Wall, and also to secure him for all notes or drafts which he may have signed as surety with Wall or which he may have indorsed," and the surplus was to be paid over to one Bates. Wall testified, that when he made the assignment, he believed that the debts to the plaintiffs were all secured by the attachment, and that the proceeds of the goods would therefore be sufficient to indemnify the defendant for his liability on a note for him at the Mendon bank for $400, and would afford a surplus for Bates, for whom the defendant acted in procuring the assignment, and whose demand was large enough to absorb any surplus after giving an indemnity to the defendant. It was contended, therefore, by the defendant, that this assignment ought not to render him liable to the plaintiffs beyond the proportion above stated, as by virtue of the assignment he was accountable to Bates.

If the plaintiffs were entitled to recover the whole or any part of the notes in suit, the defendant was to be defaulted, and judgment was to be rendered for such sum as the Court should find due.

*Merrick*, for the plaintiffs, to the point, that the indulgence given to Wall the principal, did not discharge the defendant his surety, cited *Hunt* v. *Bridgham*, 2 Pick. 581, [2d ed. 585, 586, note 3 ;] *Frye* v. *Barker*, 4 Pick. 382 ; *Crane* v. *Newell*, 2 Pick. 612 ; *Bellows* v. *Lovell*, 5 Pick. 307 ; *Oxford Bank* v. *Lewis*, 8 Pick. 458.

The sum received by the plaintiffs on their execution, is a

Blackstone
Bank
*v.*
Hill.

131

*Oct. 8th*

payment by the principal debtor, and as he did not elect to apply it to particular notes, the plaintiffs may make the appropriation. 3 Stark Ev. 1091 ; 5 Dane's Abr. 359, c. 154, § 9 ; *Martin v. Brecknell,* 2 Maule & Selw. 39 ; *Field v. Holland,* 6 Cranch, 8 ; *Brewer v. Knapp,* 1 Pick. 332.

Wall assigned property to the defendant to secure him against these very liabilities. It was conveyed in trust for the use of the plaintiffs. *De Wolf v. Chapin,* 4 Pick. 59 ; *Neilson v. Blight,* 1 Johns. Cas. 205 ; *Bachelder v. Fiske,* 17 Mass. R. 464 ; *Aikin v. Dunlap,* 16 Johns. R. 77.

*J. Davis* and *W. S. Hastings,* for the defendant. There was not merely delay in collecting the notes now in suit, but a new credit was given to the principal, founded on two considerations ; one, the exchange of bills, which occasioned inconvenience to the principal and was beneficial to the plaintiffs ; the other, the payment of interest in advance, which was not required by the notes themselves. *Hunt v. Bridgham,* 2 Pick. 581 ; *Bellows v. Lovell,* 5 Pick. 307 ; *Kennebec Bank v. Tuckerman,* 5 Greenl. 130 ; *Samuel v. Howarth,* 3 Meriv. 272. The new credit was conditional, and it was not competent to the plaintiffs to collect the notes, unless they could show that money was wanted at the bank.

The notes have been satisfied in part. The plaintiffs might have brought a separate action on each of the notes included in their judgment, and have applied any payment not appropriated by Wall, to either of them ; but they have elected to place all the notes upon the same footing, and to apply the amount obtained on execution, to each note *pro ratâ.* All the notes are merged in the judgment. It is only by the presumed assent of the debtor, that the creditor makes the application of a payment ; but whatever is obtained on execution by process of law, cannot be applied by the debtor, and consequently not by the creditor. *Barrett v. Lewis,* 2 Pick. 123, [2d ed. 125, note 1 ;] *Favenc v. Bennett,* 11 East, 36. The interests of a surety control the power of the principal, in the application of general payments. 1 Evans's Poth. Oblig. 328 *et seq. ; Devaynes v. Noble,* 1 Meriv. 604 ; *Bacon v. Brown,* 1 Bibb, 334 ; *Shaw v. Picton,* 4 Barn. & Cressw. 715 ; *United States*

*v. January,* 7 Cranch, 572 ; *Marryatts v. White,* 2 Stark.
R. 101.

The assignment was made merely as security to the defendant, if he should be eventually liable ; and not to extend his liability. Bates has a right to insist that the defendant shall be held to pay no more than he would be legally bound to pay if there were no assignment. *Taylor v. Savage,* 12 Mass. R. 98 ; *Chapin v. DeWolf,* 4 Pick. 59.

*Per Curiam.* The first objection, that an extension of credit was given to the principal without the consent of the surety, if made out, would be a good defence, but it is not supported in point of fact. The principle is stated in *Oxford Bank v. Lewis,* 8 Pick. 458, [2d ed. 459, note 1,] that to discharge the surety, the contract for new credit must be such as will prevent the holder of the note from bringing an action against the principal. The plaintiffs were not precluded, during such supposed renewed term of credit, from suing the principal, in the case under consideration. As to the understanding that the plaintiffs were not to collect the note unless they should want money, that was a matter of courtesy rather than of legal obligation. The strongest circumstance showing a renewed credit, is the receiving of interest in advance ; but in the case of *Oxford Bank v. Lewis,* where that point was directly adjudged, it was held that that circumstance did not tie the hands of the plaintiffs, if at any time they thought it necessary for their security to bring an action.[1]

Another question is, to what amount is the defendant chargeable. A surety is only answerable for so much of the debt as is not paid by the principal. The defendant relies on the judgment recovered by the plaintiffs upon several notes, including the two now in suit, and a partial satisfaction of the plaintiff's execution, as showing a payment upon the two notes.

Blackstone
Bank
*v.*
Hill.

*Oct. 11th.*

133

---

[1] See *Freeman's Bank v. Rollins,* 13 Maine R. (1 Shepley,) 202; *Central Bank v. Willard,* 17 Pick. 154; *Davey v. Prendergrass,* 5 Barn. & Ald. 187; *Bulteel v. Jarrold,* 8 Price, 467; *Butler v. Hamilton,* 2 Desaus. 226; *Bank of Steubenville v. Hoge,* 6 Hammond, 17; *Albany Dutch Church v. Vedder,* 14 Wendell, 165; *Sprigg v. Bank &c.* 10 Peters, 257; *Bever v. Butler,* Wright, 367; *Kennebec Bank v. Tuckerman,* 5 Greenleaf, 520; *Reddish v. Penthuesen,* Wrigh', 538.

Blackstone
Bank
v.
Hill.

The plaintiffs claim the benefit of the principle of law enabling a creditor having several demands against a debtor, to appropriate a payment to the demand which is least secure, unless the debtor, at the time of the payment, elects to have it appropriated to a different demand. The principle is clear, where it can be applied; but it has place only in cases of voluntary payment. It cannot be applied to a payment by process of law or *in invitum*. It was not in the power of Wall to make his election, and say that the property levied on should be appropriated in satisfaction of a particular note out of several embraced in the judgment. We think the same rule applies to the plaintiffs. All the debts sued by them having been consolidated into one by the judgment, and that one having been partly discharged, all the notes embraced in it must be taken to be satisfied proportionably, and the notes now in suit are therefore paid *pro tanto*.[2]

A question remains in regard to the assignment. If the provision had been, that the defendant should first apply the property assigned, to the payment of the notes signed by the assignor, and then pay over the surplus to Bates, the defendant would be held to apply the proceeds to pay the notes. But he would not be so held, if the goods were assigned to him in order that with the proceeds he might indemnify himself against his liabilities, and pay over the surplus to Bates. And such is clearly the character and effect of this assignment. Bates has a claim against the defendant for all the property not required for the indemnity of the defendant, and the assignment does not enlarge his liability.

*Defendant defaulted.*

---

[2] See *Barrett* v. *Lewis*, 2 Pick. (2d ed.) 125, note 1; 1 Evans's Pothier, 368 *et seq.*